UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWRENCE MOSKOWITZ CLU. LTD
*and* LAWRENCE MOSKOWITZ,

Plaintiffs

- *against* -

ALP, INC,

Defendant.

**OPINION & ORDER**

19 Civ. 3868 (ER)

RAMOS, D.J.:

Plaintiffs Lawrence Moskowitz ("Moskowitz") and Lawrence Moskowitz CLU

Ltd. ("Moskowitz CLU") bring this action against ALP, Inc. ("ALP") for breach of

contract, anticipatory breach of contract, declaratory judgment, rescission, *quantum*

*meruit*, restitution, and unjust enrichment.  ALP moves to dismiss pursuant to Fed. R.

Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under the doctrine of federal

abstention, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  For the

following reasons, ALP's Rule 12(b)(1) motion is GRANTED.  Because the Court lacks

jurisdiction over this action, it declines to rule on ALP's Rule 12(b)(6) motion.

## I.     PROCEDURAL HISTORY

This action stems from the now fraught business relationship between Moskowitz,

alleged in the Complaint to be a citizen of the U.S. Virgin Islands ("USVI") (and his

USVI business, Moskowitz CLU) and ALP, a New York company established by the

artist Peter Max.  (*See* Compl. ¶¶2-4, 12.)  As alleged in the Complaint, Moskowitz

befriended Peter Max in the 1990s, and, starting in 2011, provided services to assist with

Peter Max's business affairs, which Moskowitz alleges to have been in disarray.  (*Id*. ¶¶

9-11.)  Over the years, Moskowitz and his company became more involved in ALP's

business, and Plaintiffs allege that several contractual agreements between the entities

were created during this period.  (*Id.* ¶¶ 12-38.)

In 2015, after a series of court proceedings, a personal guardian was appointed for Peter Max, as was a financial guardian to oversee his financial affairs. (*Id.* at ¶ 33.) There was subsequently an intra-family legal battle for control of ALP, from which Libra Max, Peter Max's daughter, emerged victorious. (*Id.* ¶¶ 45, 52.) Now in control, Libra Max, on behalf of ALP, brought more than one action against individuals and entities who have over the years been involved in ALP's operations. (*Id.* ¶¶ 54-61.) These include an action against Moskowitz and several others, captioned *ALP, Inc. v. Moskowitz, et al.*, NY. Sup. Ct. No. 652326/2019 (the "State Court Action") (*see id.* ¶ 61, Mot. at 3-4) and an action against Park West Galleries, Inc. (NY Sup. Ct. No. 153949/2019) regarding the sale of certain artwork (the "Park West Action") (*see* Mot. at 4). ALP alleges that Park West Galleries was in a conspiracy with Moskowitz and others to "loot ALP." (*See* Compl. ¶ 54; Mot. at 3-4.) The State Court Action and the Park West Action were both assigned to New York Supreme Court Justice Bannon, who also oversaw the litigation over the control of ALP. (*See* Compl. ¶ 62; Mot. at 4.)

This action was commenced on April 30, 2019, a day after Moskowitz removed the State Court Action from New York Supreme Court.[1] As Plaintiffs noted in their Related Case Statement, "both [this action and the State Court Action] seek to clarify the relative rights of ALP, Inc., on the one hand, and of Lawrence Moskowitz and Lawrence Moskowitz CLU Ltd., on the other hand (although Lawrence Moskowitz CLU Ltd. is not a named defendant in the earlier-filed case), relating to various agreements entered into between those parties that are the subject of both actions." (*See* Dkt. No. 3 at 2.)

Plaintiffs state that they filed this action because at the time the State Court Action was removed, Moskowitz had not yet been served with initiating papers and therefore, Plaintiffs claim, there was no procedure for them to defend against ALP's claims or to

---

[1] In the United States District Court for the Southern District of New York, the State Court Action was assigned case number 19 Civ. 3816 (DAB).

assert their own counter claims.[2]  (*See id.*)  This action was accepted as related to the removed State Court Action, and both actions were assigned to Judge Deborah A. Batts. (*See* Dkt. entries of June 20, 2019.)  On July 9, 2019, Judge Batts remanded the State Court Action back to New York Supreme Court finding a lack of subject matter jurisdiction.  *See ALP, Inc. v. Moskowitz, et al.*, No. 19 Civ. 3816 (DAB), Dkt. No. 53 at 1 (S.D.N.Y. Jul. 9, 2019).  Specifically, Judge Batts found that because ALP and Moskowitz's co-defendants were citizens of New York, Moskowitz had improperly invoked the court's diversity jurisdiction in removing the action.  *Id.*  Judge Batts did not address the question of Moskowitz's citizenship.  On February 20, 2020, this action was reassigned to the undersigned.  (Dkt. entry of Feb. 2, 2020.)

ALP now moves to dismiss, arguing that this Court lacks subject matter jurisdiction because ALP and Moskowitz are citizens of the same state, defeating this Court's diversity jurisdiction.  Alternatively, ALP asks this Court to decline hearing this case under the *Colorado River* abstention doctrine, deferring to the State Court Action in New York Supreme Court, or, if not, to dismiss this action for failure to state a claim.

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule

---

[2] The State Court Action was commenced by the filing of a Summons with Notice in the Supreme Court of the State of New York on April 19, 2019, eleven days before Plaintiffs filed the Complaint in this action. (*See* Declaration of Jeffrey M. Eilender in Support of ALP Inc.'s Motion to Dismiss ("Eilender Decl.") Ex. 1 at 2.)

12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true "unless contradicted by more specific allegations or documentary evidence." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (citing *L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), aff'd, 496 F. App'x 131 (2d Cir. 2012), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright*, No. 05 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

## III.   DISCUSSION

ALP asserts two independent bases for dismissal under Fed. R. Civ. P. 12(b)(1): that diversity jurisdiction is absent; and that abstention is warranted under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  The Court addresses each in turn.

## A.  The Court's Diversity Jurisdiction

While it undisputed that ALP is a citizen of New York and Moskowitz CLU of the U.S. Virgin Islands, ALP argues that Moskowitz is a citizen of New York, and not the U.S. Virgin Islands, as claimed in the Complaint, depriving this Court of its subject matter jurisdiction.  (*See* Mot. at 11-15.)  Plaintiffs do not dispute that Moskowitz was, at one time, a citizen of New York.  (*See* Opp. at 11.)  Rather, they argue, "nearly all" of Moskowitz's New York connections are "stale," and Moskowitz is now a citizen of the U.S. Virgin Islands, or, in the alternative, of California.  (Opp. at 10-13.)

The federal district courts have diversity jurisdiction of "civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  For diversity jurisdiction to exist, there must be "complete diversity," meaning no adverse parties are citizens of the same state.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  If, therefore, the Court finds that Moskowitz was indeed a citizen of New York at the time this action commenced, the Court must dismiss this action for lack of subject matter jurisdiction.  *See Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) (holding that it is "hornbook law" that federal diversity jurisdiction is examined at the time the action was commenced).

For purposes of diversity jurisdiction, citizenship is based upon domicile.  *Id*. at 948.  "Domicile is the place where a person has his true and fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning."  *Id*.  "Domicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another."  *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (internal quotations omitted).  "One acquires a 'domicile of origin' at birth, which continues until a change in domicile occurs."  *Linardos*, 157 F.3d at 948 (citing *Mississippi Band of Choctaw Indians,* 490 U.S. at 48).  "It is well established that in order 'to effect a change of one's legal domicil, two things are indispensable: First, residence in a new domicil; and, second, the intention to remain there.  The change

5

cannot be made, except *facto et amino*.  Both are alike necessary.  Either without the other is insufficient." *Linardos*, 157 F.3d at 948 (citing *Sun Printing & Publishing Association v. Edwards,* 194 U.S. 377, 383 (1904)).  "A party alleging that there has been a change of domicile has the burden of proving the 'required intent to give up the old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'" *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 243-44 (2d Cir. 1984).

"'Factors frequently taken into account in determining domicile include current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes.'" *Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07 Civ. 3848 (WHP), 2008 WL 926583, at *3 (S.D.N.Y. April 2, 2008) (quoting *Bank of India v. Subramanian*, No. 06 Civ. 2026 (WHP), 2007 WL 1424668, at *3 (S.D.N.Y. May 15, 2007).  "Courts also consider 'whether a person owns or rents his place of residence, the nature of the residence (*i.e.*, how permanent the living arrangement appears) and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.'" *Id*. (quoting *Nat'l Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

*1.  The Parties' Factual Assertions*

Through affidavits and documentary evidence submitted as exhibits to their papers, the parties present contrasting evidence of Moskowitz's citizenship.

In support of their claim of Moskowitz's USVI citizenship, Plaintiffs argue that Moskowitz:  (a) considers St. John, the USVI to be his permanent domicile; (b) from 2010 through September 2017, "spent nearly half of his time in St. John renting various properties there on a long term bases" (splitting the remaining half between California New York, "and other places where [Moskowitz and his wife] have traveled"); (c)

belongs to a synagogue in the USVI, the only synagogue to which he belongs; (d) is a member of, and has been heavily involved with, the Chamber of Commerce in St. John; (e) has volunteered his services and donated funds to assist the University of the Virgin Islands to build a medical school; (f) has a company that applied for a tax incentive program through the USVI Economic Development Commission; (g) is a licensed insurance producer and adjuster in the USVI; (h) pays local and state taxes in St. John;[3] (i) performed work for ALP through his USVI company, Lawrence Moskowitz CLU, Ltd., or addressed to him at his USVI address; (j) was, in 2015, served with a complaint while living in St. John; (k) has bank accounts in the USVI, as well as in California and New York; and (l) incorporated his company in the USVI  (Opp. at 10-11; Moskowitz Decl. ¶¶ 2-8, 18 Exs. 1-6.)  Plaintiffs state that Moskowitz has been forced to reside outside the USVI since 2017 after Hurricane Irma devastated St. John, mostly in California where he owns and rents property, but intends to return to the island and "make it [his] permanent residence as soon as possible."  (Opp. at 2, 11; Declaration of Lawrence Moskowitz ("Moskowitz Decl.") ¶¶ 9-10.)

        In support of its view that Moskowitz is a New York citizen, ALP posits that Moskowitz:  (a) owns a home in New York, and not in the USVI; (b) claims a tax exemption (the "STAR exemption") on his New York home that is only available on primary residences; (c) at the time Plaintiffs filed the Complaint, maintained an office in New York in connection with his job selling insurance as an agent for New York Life Insurance Company; (d) files taxes in New York, and, despite an invitation to do so, has not stated whether he files as a resident, or instead completes a form for non- or part-time residents; (e) has a New York State driver's license; (f) leases two cars in New York; (g)

---

[3] The document submitted in support of Moskowitz's claim that he pays local and state taxes in St. John is a letter from the USVI Bureau of Internal Revenue which says only that he is "current in the filing and payment of [his] tax obligation."  (*See* Moskowitz Decl. Ex. 5.)  The document suggests that the letter was requested in connection with an application or renewal of a license and states that the "certification is for license purposes only . . .."  (*Id.*)

has personal and business phone numbers with New York area code prefixes; (h) has a bank account in New York; and (i) has children who live in New York.  (*See* Repl. at 3-4, 4 nn. 3-4; Mot. at 13-4.)  Moreover, ALP argues, Plaintiffs cannot establish that Moskowitz is domiciled in the USVI.  It argues that Moskowitz does not claim to (a) have moved his personal effects from New York to the USVI; (b) be registered to vote in the USVI; (c) own a primary residence in the USVI; (d) have doctors, lawyers, accountants, dentists, or stockbrokers in the USVI; (e) have changed his mail address with the U.S. Postal Service; or (f) listed his residence in the USVI in "deeds, hotel registrations, passport applications or any other documents requiring a declaration of residence."  (*See* Repl. at 4. n. 3; *see also* Repl. at 4-5; Mot. at 14-15.)  With respect to Moskowitz's claims of California citizenship, ALP notes that Moskowitz admits that he has no intention of remaining in California, which is required to establish a domicile. (Repl. at 5 (citing *Techno-TM, LLC v. Fireaway, Inc.*, 928 F. Supp. 2d 694, 699 (S.D.N.Y. 2013)).

In response to ALP's factual assertions regarding his ties to New York, Moskowitz argues:  (a) the STAR exemption, available on primary residences, claimed on his New York home is a "legacy exemption," he has not applied to renew it, and its presence on his property tax records is "a result of old record keeping;" (b) his New York driver's license was issued in 2011, has not yet expired, and he intends to change it to St. John when it does;[4] (c) over the past three years he has spent less than 30% of his time in New York; (d) he has had his phone numbers with New York prefixes for over ten years and he would have to contact thousands of his colleagues to advise them of a change; (e) he has (though it seems after the Complaint was filed (*see* Repl. at 4 n. 4)) retired from his job at New York Life Insurance Company, and therefore no longer has an office there; (f) his New York home is occupied by his adult son and daughter; and (g) of his two cars leased

---

[4] The Court notes that Moskowitz claims to have started spending roughly half his time in the USVI in 2010.  (*See* Moskowitz Decl. ¶ 2.)

8

in New York, one is primarily used by his daughter, and the other was shipped to California in October 2018.  (Moskowitz Decl. ¶¶ 11-16; Opp. at 11-13.)

    *2.  Analysis*

    While not an obvious decision, the Court finds that Plaintiffs have not met their burden of establishing Moskowitz's USVI domicile.  As courts have recognized, "in the age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult, even a rather arbitrary, undertaking." *Galva Foundry Co. v. Heiden*, 924 F. 2d 729, 730 (7th Cir. 1996) (Posner, J.); *see also Wiest v. Breslaw*, No. 01 Civ. 5663 (LMM), 2002 WL 413925, at *3 (S.D.N.Y. Mar. 15, 2002). Nonetheless, the Court is not convinced that Plaintiffs have demonstrated by clear and convincing evidence that Moskowitz has given up his New York domicile, and actually acquired residence in the USVI or California.  *See Corio*, 232 F.3d at 42; *see also Halbritter*, 2008 WL 926583, at *3 ("Because there is conflicting evidence supporting domicile in New York and Florida, Halbritter has not provided clear and convincing evidence that she changed her domicile from New York to Florida. Thus, her presumptive domicile is New York.")

    At the time the Complaint was filed, Moskowitz continued to maintain strong ties to New York.  This includes, among others, having a New York office, leasing two cars in New York, owning a home in New York, and keeping a New York State-issued driver's license.  Moskowitz does not claim to have moved his personal effects from New York. And, notably, despite being provided an opportunity to do so, Moskowitz does not say whether the taxes he admits to filing in New York are filed as a resident or as a non- or part-time resident.  (*See* Mot. at 12-13.)  Because Plaintiffs bear the burden of establishing jurisdiction, it is reasonable to hold the failure to do so against them. *Kinsley v. Signorelli*, No. 92 Civ. 6421 (LBS), 1993 WL 127965, at *3 (S.D.N.Y. Apr. 20, 1993) (finding plaintiffs' failure to address the presence or absence of factors typically considered in ascertaining whether a change of domicile has occurred required construing

the omissions against them).  Moreover, several Courts have found parties estopped from taking a position inconsistent with representations in a tax return.  *See Armstrong v. Collins*, No. 01 Civ. 2437 (PAC), 2010 WL 1141158, at *31 (S.D.N.Y. Mar. 24, 2010) (collecting cases).[5]

Further, while Plaintiffs provide various statements regarding Moskowitz's intent to establish domicile in the USVI, "they are of slight weight," when as here, "'they come into conflict with other facts that tend to disclose a contrary intent.'"  *Wiest*, 2002 WL 413925, at *3 (quoting *Bevilaqua v. Bernstein,* 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986)).[6]  As ALP notes, Moskowitz's claim of being domiciled in California can be dismissed given his stated intent to leave California.  *Linardos*, 157 F.3d at 948 (establishing domicile in a new state requires an "the intention to remain there.")

Therefore, because Moskowitz and ALP are both citizens of New York, defeating the Court's diversity jurisdiction, and Plaintiffs assert no other jurisdictional basis for this action to proceed in federal court, ALP's Rule 12(b)(1) motion for lack of subject matter jurisdiction is GRANTED.

---

[5] ALP argues that Plaintiffs are estopped from denying that New York is Moskowitz's primary residence because he claims the STAR exemption on his New York home, which is only available on primary residences.  (*See*. Mot. at 12-13.)  The Court declines to apply the doctrine of estoppel because Moskowitz says that property is co-owned with his wife, whose domicile is not in question, and only one home owner needs to meet the "primary residence" requirement for the STAR exemption to apply.  *See Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 194 (E.D.N.Y. 2010) ("Judicial estoppel does not apply 'if the statements or positions in question can be reconciled in some way.'") (quoting *Negron v. Weiss*, No. 06 Civ. 1288 (CBA), 2006 WL 2792769, at *4 (E.D.N.Y. Sept. 27, 2006)).  Nonetheless, the Court is mindful that Moskowitz elsewhere claims that the residence is primarily used by his children, not his wife, and weighs this together with the other evidence presented by the parties.  (*See* Moskowitz Decl. ¶ 13.)

[6] In their opposition papers, Plaintiffs cite a Fifth Circuit opinion for the proposition that "forced relocation due to the occurrence of a natural disaster and an evacuation from a particular location does not alter a person's domicile as to that location."  (*See* Opp. at 11 (citing *Preston v. Tenet Healthsystems Mem. Med. Ctr., Inc.*, 484 F.3d 804 (5th Cir. 2007).  The Court does not find that Moskowitz is not a citizen of the USVI because he left St. John after Hurricane Irma, rather that he never established the USVI as his domicile.

### B. *Colorado River* Abstention

ALP also asserts an additional, independent basis for dismissal.  ALP asks the

Court to refuse to hear this action pursuant to the *Colorado River* abstention doctrine, and

to dismiss this case in favor the State Court Action.  (Mot. at 15-18.)  For the reasons set

forth below, the Court finds that even if Plaintiffs were able to establish Moskowitz's

USVI citizenship, the Court would dismiss this action based on abstention.

Federal courts may abstain from exercising jurisdiction over an action for which

there is a parallel state court proceeding based on considerations of "wise judicial

administration, giving regard to conservation of judicial resources and comprehensive

disposition of litigation."  *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v.

C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).  The burden of persuasion is

with the party moving for *Colorado River* abstention.  *Arkwright-Boston Mfrs. Mut. Ins.

Co. v. City of N.Y.*, 762 F.2d 205, 210 (2d Cir. 1985).

"An analysis of whether a court should abstain under *Colorado River* begins with

a determination of whether the concurrent federal and state proceedings are 'parallel' in

nature."  *Fernandez v. City of New York*, 2017 WL 2894144, at *2 (S.D.N.Y. July 7,

2017) (citing *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  Federal and

state proceedings are "parallel" for abstention purposes when "substantially the same

parties are contemporaneously litigating substantially the same issue in another

forum."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,

673 F.3d 84, 100 (2d Cir. 2012).  "Perfect symmetry of parties and issues is not required.

Rather, parallelism is achieved where there is a substantial likelihood that the state

litigation will dispose of *all* claims presented in the federal case."  *Shields v. Murdoch*, 11

Civ. 4917 (PGG), 2012 WL 4097199, at *5 (S.D.N.Y. Sept. 18, 2012) "(quoting *In re*

*Comverse Tech., Inc.,* 06 Civ. 1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y.

Nov. 2, 2006)) (emphasis in original) (internal quotation marks omitted).

> *Colorado River* abstention is only warranted in "exceptional circumstances."

*Colorado River*, 424 U.S. at 813.  "The mere fact of concurrent state and federal

proceedings 'does not, without more, warrant staying exercise of federal jurisdiction.'"

*All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 602 (2d Cir. 1988) (quoting *Colorado River*,

424 U.S. at 816).  In determining whether abstention is warranted, courts consider six

factors:

> (1) whether the controversy involves a res over which one of the courts has as-
> sumed jurisdiction, (2) whether the federal forum is less inconvenient than the
> other for the parties, (3) whether staying or dismissing the federal action will
> avoid piecemeal litigation, (4) the order in which the actions were filed, and
> whether proceedings have advanced more in one forum than in the other, (5)
> whether federal law provides the rule of decision, and (6) whether the state proce-
> dures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir.

2001) (internal citations omitted).  "No one factor is necessarily determinative; a care-

fully considered judgment taking into account both the obligation to exercise jurisdiction

and the combination of factors counselling against that exercise is required." *Royal &*

*Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006)

(quoting *Colorado River*, 424 U.S. at 818-19).  The balance of these factors is "heavily

weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mer-*

*cury Constr. Corp.*, 460 U.S. 1, 16 (1983).  "Where a *Colorado River* factor is facially

neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Niagara Mohawk*

*Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 101 (2d Cir. 2012) (quoting *Woodford*, 239 F.3d at 522.)

### 1. Parallelism

As a threshold matter, the Court finds that this action and the State Court Action are parallel within the meaning of *Colorado River*. ALP and Moskowitz are both parties to the State Court Action which covers the same issues addressed in this action. *See Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum."); *see also Krondes v. Nationstar Mortg., LLC*, 789 F. App'x 913, 914 (2d Cir. 2020) (same). As Plaintiffs themselves acknowledged in filing their Related Case Statement "both [this action and the State Court Action] seek to clarify the relative rights of ALP, Inc., on the one hand, and of Lawrence Moskowitz and Lawrence Moskowitz CLU Ltd., on the other hand . . . relating to various agreements entered into between those parties that are the subject of both actions . . . [This action and the State Court Action] each require resolution and adjudication of substantially overlapping factual and legal issues." (*See* Dkt. No. 3 at 2.)

A closer examination of the complaints in the respective actions reveals that the suits are near-mirror images of each other. This action alleges breach of contract, anticipatory breach of contract, declaratory judgment, rescission, as well as quasi-contractual claims for *quantum meruit*, restitution, and unjust enrichment, with respect to various agreements or purported agreements that are the subject of the State Court Action. (*Compare* Compl. ¶¶ 69-126 *with* Eilender Decl. Ex. 1 ("State Court Action Compl.") ¶¶ 245-

328; *see also* Compl. at 25 (prayer for relief seeking "a declaratory judgment and perma-nent injunction declaring that Plaintiffs' various agreements with ALP are valid and en-forceable and that all funds paid to Plaintiffs to date were proper; that Plaintiffs have not violated any fiduciary duties to ALP . . ..).  These very agreements or purported agree-ments that Plaintiffs in this action say ALP breached are the subject of mirror claims in the State Court Action for, among other things, declaratory judgment and rescission. (*See, e.g.*, State Court Action Compl. ¶ 255 ("[The Release/Indemnity Agreement be-tween Moskowitz and ALP] are invalid and should be rescinded because they were fraud-ulently induced."), ¶ 266-67 ("all other agreements that benefitted defendants" were re-quired to be, but never were, "approved by a disinterested shareholder or director or by the board, [and therefore] they are invalid."), ¶ 270 ("ALP requires a declaratory judg-ment declaring that the purported sale of Peter's Keepers, the Release/Indemnity Agree-ment, the 2016 Consulting Agreement, the 2016 and 2017 Escrow Agreements, the 2018 Assignment Agreement . . . any alleged agreement to provide Moskowitz with a commis-sion, an interest in ALP or repay his fictitious expenses or loans are invalid and re-scinded, such agreements or obligations never having existed in the first instance.")

In their opposition brief, Plaintiffs argue that the actions are not parallel within the meaning of *Colorado River* because Moskowitz CLU is not a party to the State Court Ac-tion and because the actions are not "*currently* parallel" as the Moskowitz parties have not yet asserted counterclaims in the State Court Action.  (Opp. at 16-17.)  The Court dis-agrees.  "[P]arallelism does not require an "exact identity of parties when the interests of the parties in each case are congruent."  *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289,

298 (S.D.N.Y. 2017) (citations omitted). "'If the rule were otherwise the Colorado River doctrine could be entirely avoided by the simple expedient of naming additional parties.'" *Id.* (quoting *Manna v. Greenburgh No. 11 Sch. Dist.*, 2 F.Supp.2d 461, 468 n. 4 (S.D.N.Y. 1998). Plaintiffs do not assert that their interests are not congruent, and the Court sees no reason to so find. Indeed, all the Complaint's causes of actions are brought on behalf of "Plaintiffs," and the one cause of action which, by its title, refers only to a contract with Moskowitz CLU, the second claim for relief, relates to an agreement concerning insurance proceeds that Plaintiffs acknowledge was consummated before Moskowitz CLU was incorporated and at a time at which Moskowitz CLU was simply Moskowitz's "d/b/a."[7]  (*See* Opp. at 18.)  With respect to Plaintiffs' argument that the actions are not presently parallel because they have not yet asserted counter-claims in the State Court Action, the Court notes that perfect symmetry is not required, *see Shields*, 2012 WL 4097199, at *5, and further that the issues in this action are *presently* at issue in the State Court Action. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28 (abstention is appropriate where "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.); *see also King v. Six Stars of New York, Inc.*, No. 16 Civ. 3291 (BMC), 2016 WL 4523920, at *3 (E.D.N.Y. Aug. 22, 2016) ("In *Colorado River* and the usual abstention case, it will be a defendant in one case that is a plaintiff in the other.").

Lastly, Plaintiffs argue the cases are not parallel because the State Court Action also involves claims concerning a transaction to which Moskowitz "had no meaningful

---

[7] As ALP notes "[d]oing business under another name does not create an entity [distinct] from the person operating the business. (*See* Repl. at 9 (citing *Trustees of the Mason Tenders v. Faulkner*, 484 F. Supp. 2d 254, 257 (S.D.N.Y. 2007).

input" and other parties "who have nothing to do with the contracts at issue in this case." (Opp. at 17.)  This argument has the issue backwards—the question is not whether the federal action will resolve those issues raised in the state action, but whether there is a substantial likelihood that the state court action will resolve the federal one.  *See Shields*, 2012 WL 4097199, at *5.  The Court finds that there is.

### 2.  *First* Colorado River *Factor*

Having found that the suits are parallel, the Court now turns to the first *Colorado River* factor, "whether the controversy involves a *res* over which one of the courts has assumed jurisdiction." *Woodford*, 239 F.3d at 522.  Because this is not an *in rem* action and there is no property or *res* at issue here, this factor "weighs against abstention." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (citing *De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir. 1989)).[8]

### 3.  *Second* Colorado River *Factor*

The second *Colorado River* factor, "whether the federal forum is less inconvenient than the other for the parties" also points to retaining jurisdiction.  *Woodford*, 239 F.3d at 522.  ALP does not challenge the convenience of the federal forum.  Both courts are located in Manhattan, indeed, both courts are located on the same city block, and therefore equally convenient.  Neutral *Colorado River* factors are a basis for retaining jurisdiction.  *Niagara Mohawk Power Corp*, 673 F.3d at 101.

---

[8] While ALP concedes these proceedings are not *in rem*, it argues it does involve a collection of artwork referred to as "Peter's Keepers" and Justice Bannon, the New York Supreme Court justice overseeing the State Court Action, has "issued a temporary restraining order protecting the artwork at issue." (*See* Mot. At 16.)  The Court disagrees that this counsels in favor of abstention.  Much of this action is unrelated to Peter's Keepers, and the temporary restraining order Justice Bannon issued was not against either party to this action, but against another party in a separate action from the State Court Action.  (*See* Mot. at 16.)

   *4.   Third* Colorado River *Factor*

   The third *Colorado River* factor concerns whether "staying or dismissing the federal action will avoid piecemeal litigation." *Woodford*, 239 F.3d at 522. The Court finds that it would. The Supreme Court has characterized the avoidance of piecemeal litigation as "paramount" in a *Colorado River* analysis. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19; *see also Niagara Mohawk Power Corp.,* 673 F.3d 84 at 101 ("[A]voidance of piecemeal litigation is indeed an important value.") As previously discussed, this action and the State Court Action are near-mirror images of each other—this action largely focuses on enforcing the very contracts that ALP asserts are invalid in the State Court Action—meaning that a failure to abstain may result in "inconsistent disposition[s]" and "breed additional litigation on assertions of claim and issue preclusion." *See Awkright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F. 2d 205, 211 (2d Cir. 1985); *see also Krondes v. Nationstar Mortg., LLC*, No. 17 Civ. 4974 (WHP), 2018 WL 2943774, at *4 (S.D.N.Y. June 12, 2018), *aff'd*, 789 F. App'x 913 (2d Cir. 2020).

   Further, the Second Circuit has stated "the primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of *res judicata* and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties." *Woodford*, 239 F.3d at 522 (citing *De Cisneros,* 871 F.2d at 308; *General Reinsurance Corp. v. Ciba–Geigy Corp.,* 853 F.2d 78, 81 (2d Cir. 1988); *Lumbermens Mutual Casu-*

*alty Co. v. Connecticut Bank & Trust,* 806 F.2d 411, 414 (2d Cir. 1986).  Similar concerns exist here.  For example, Plaintiffs here seek enforcement of the 2016 Consulting Agreement, but, in the State Court Action, ALP argues that agreement—and indeed "all other agreements that benefitted the defendants"— is unenforceable because it is the product of self-dealing and breaches of the duties of loyalty, not only of Moskowitz, but of Frank and Bender Ciccotto, other defendants in the State Court Action.  (*Compare* Compl. ¶ 86 *with* State Court Action Complaint ¶ 267).

Accordingly, the Court weighs this factor in favor of abstention.

### 5.   *Fourth* Colorado River *Factor*

The fourth *Colorado River* factor concerns "the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other." *Woodford*, 239 F.3d at 522.  Here, the State Court Action was filed on April 19, 2019, and this action was filed on April 30, 2019.  (*See* Mot. at 16.)  Nonetheless, where "there has been limited progress in the state court suit," this factor carries "little weight."  *Niagara Mohawk Power Corp*, 673 F.3d at 102 (quoting *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (internal quotations omitted).  The parties provide little information regarding the progress of the State Court Action, but the Court's review of the docket in that case suggests that, not helped by Moskowitz's quixotic quest to remove the State Court Action, the two actions remain at roughly similar stages.  Motions to dismiss in the State Court Action remain pending; the parties requested an adjournment of oral argument on those motions noting that they were engaged in settlement discussions.  *See ALP, Inc. v. Moskowitz*, No. 65325/2019 (N.Y. Sup. Ct.), Dkt. No. 425.  ALP argues that

it will soon move to consolidate the State Court Action with the Park West Action pro-
ceeding in state court in which a discovery schedule has been set.  (Mot. at 17.)  But, the
actions have not yet been consolidated.  *See ALP, Inc. v. Moskowitz*, No. 65325/2019
(N.Y. Sup. Ct.).

The Court regards this factor as neutral, and neutral factors counsel against ab-
stention.  *See Niagara Mohawk Power Corp*, 673 F.3d at 101.

### 6. *Fifth* Colorado River *Factor*

The fifth *Colorado River* factor asks whether "federal law provides the rule of de-
cision."  *Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d
Cir. 2001).  The claims at issue here are all brought under state law.  The absence of
questions of federal law counsel in favor of abstention.  *Buhannic v. Schroeder*, No. 18
Civ. 10170 (ER), 2019 WL 4735378, at *6 (S.D.N.Y. Sept. 27, 2019).  This is especially
so because the state law issues, while not novel, appear to involve an extensive factual
record, which overlaps at least somewhat with other actions involving multiple other par-
ties, and which has spawned multiple other cases already proceeding in state court before
a single judge.  *See Niagara Mohawk Power Corp*, 673 F.3d at 102 ("the *absence* of fed-
eral issues does not strongly advise dismissal, unless the state law issues are novel or par-
ticularly complex.") (emphasis in original) (internal citation omitted); *see also Arkwright-
Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985).

The Court, therefore, weighs this factor in favor of abstention.

### 7. *Sixth* Colorado River *Factor*

The sixth *Colorado River* factor asks "whether the state procedures are adequate to
protect the plaintiff's federal rights."  *Woodford*, 239 F.3d at 522.  Plaintiffs do not take

issue with the procedures or relief available in state court, and the Court is aware of none. (*See* Opp. at 17.)  Instead, Plaintiffs merely repeat their already-addressed argument that Moskowitz CLU is not presently a party to the State Court Action.  (*Id.*)  Again, *Colorado River* abstention does not require "exact identity of parties when the interests of the parties in each case are congruent."  *Phillips*, 252 F. Supp. 3d 289, 298 (S.D.N.Y. 2017) (citations omitted).

Finding the state procedures adequate, the Court weighs this factor in favor of abstention.  *See Bernstein v. Hosiery Mfg. Corp. of Morganton*, 850 F. Supp. 176, 185 (E.D.N.Y. 1994) ("[Plaintiff] can raise all of the claims he raises here before the state courts. Moreover, he can seek the very same declaratory and equitable relief he seeks in this case in the state proceedings[.]").

* * *

In sum, while the Court finds that three factors weigh in favor of abstention, and three against, an appropriate balance of the factors suggests that *Colorado River* abstention is warranted here.  The desire to avoid piecemeal litigation, that this action involves issues of state law and is related to a number of actions already proceeding in state court, and the adequacy of the state procedures to protect federal rights greatly outweigh the other factors considered here.

Further, "[i]n addition to the six factors assessed under the traditional abstention test, the Court notes another consideration that significantly favors abstention in this case: the 'vexatious or reactive nature' of the Federal Action."  *Abe v. New York Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL 1275661, at *9 (S.D.N.Y. Mar. 30, 2016) (quoting *Moses H.*

*Cone Mem'l Hosp.*, 460 U.S. 1 at 17 n. 20.)  While the Second Circuit does not tradition-
ally list this factor in the *Colorado River* analysis, the Supreme Court has said this factor
"may influence the decision whether to defer to a parallel state litigation under *Colorado
River*."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1 at 17 n. 20.).  "[N]umerous courts in
this circuit have followed this directive."  *Abe*, 2016 WL 1275661, at *9 (collecting
cases).

To the extent this consideration is proper in the Second Circuit, the Court consid-
ers that it further weighs in favor of abstention here.  Eager to avoid the state court judge
assigned to the State Court Action and other related litigation (*see* Compl. ¶ 61 (criticiz-
ing ALP for bringing the State Court Action before the same state court judge assigned to
related matters and who had ruled in a manner adverse to Plaintiffs' interests)), Mos-
kowitz improperly sought to remove the State Court Action.  Judge Batts had no diffi-
cultly remanding the action to state court (*see ALP, Inc. v. Moskowitz, et al.*, No. 19 Civ.
3816 (DAB), Dkt. No. 53 at 1 (S.D.N.Y. Jul. 9, 2019)).  But Plaintiffs, through this ac-
tion, again sought to avoid the state forum that is properly hearing the State Court Action
and other related litigation.  They filed a complaint that mirrors the State Court Action
(and excludes the concededly non-diverse co-defendants in that action) claiming, implau-
sibly, that they were compelled to do so because they had not yet been served with initiat-
ing papers in the State Court Action—commenced only eleven days prior—and had no
procedure by which to defend against ALP's claims or assert their own.  (*See* Dkt. No. 3
at 2.)

The *Colorado River* doctrine, therefore, provides an independent basis to dismiss
this action.

Because this Court finds that it lacks subject matter jurisdiction over this action, and, even if it had jurisdiction, it would decline to exercise jurisdiction pursuant to the doctrine of *Colorado River* abstention, the Court does not address ALP's Rule 12(b)(6) motion to dismiss for failure to state a claim.

## IV.    CONCLUSION

For the foregoing reasons, ALP's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the motions at Dkt. Nos. 16 and 29 and close the case.[9]

It is SO ORDERED.

Dated:    March 30, 2020
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

---

[9] Plaintiffs' request for oral argument at Dkt. No. 33 is DENIED as moot.